Good afternoon. 3-16-07-61 Quality Transportation Services, Inc. Accounted by Mark Walton v. Mark Thompson Trucking, Inc. Appellee by Tomas Pozeo. Mr. Walton. Good afternoon, Justices. May it please the Court, Counsel. My name is Mark Walton, and I'm here representing the Appellant Quality Transportation Services. Also at the table is my co-counsel, Catherine Swipes. This case is an appeal from summary judgments granted against my client in favor of Mark Thompson Trucking, who was the defendant in the court below. So the statement of review is de novo, as the Court is well aware. The issue, the primary issue to be addressed is, is there a question of fact with regard to violation of a non-solicitation provision in a contract? It's not an employment contract, which is typically where non-compete provisions come up. It was a business-to-business arrangement for brokerage of transportation and trucking services. The parties agree that the term solicitation is properly defined by Black's Law Dictionary and means an attempt or effort to gain business. The parties also agree that Mark Thompson Trucking, the defendant, repeatedly submitted contract proposals to a quality transportation customer. It's our contention that delivering business proposals, especially repeatedly delivering business proposals to a potential customer, is certainly an effort or an attempt to gain business. So Mark Thompson Trucking's submission of these proposals to a quality transportation customer can't be characterized as anything other than solicitation. The only real question here is whether the act of repeatedly submitting these proposals to a customer ceases to be considered solicitation merely because the customer invited the proposals. So I think that's really the focus of this appeal, the focus in the court below. Let me give you just a little bit of the key factual background. Quality transportation services, again, is a broker. It brokers trucking services. So the agreement at issue in this case is called the Transportation Brokerage Agreement. And the defendant, apparently Mark Thompson Trucking, agreed in the agreement that it would not solicit traffic from any shipper, consignee, or customer of quality transportation where availability of the traffic first became known to Mark Thompson as a result of quality's efforts, or the traffic of the shipper or customer of QTS, quality transportation, was first tendered to Mark Thompson Trucking by quality transportation. It's critical, I sort of quote from that language, to consider how narrowly crafted that non-solicitation clause is. A typical non-solicitation, a lot of times, and again they typically come up in employment contracts, and we'll get to that a little later, but it just says you can't solicit our customers. And that's not what this says. There's no prohibition, there's no blanket prohibition on solicitation of quality transportation services customers. It's so narrowly defined that it limits only the brokerage customer from soliciting quality's customers for particular routes, particular traffic that they learned about as a result of the brokerage arrangement. And there's a limitation for, it's a 12-year window after. One year, 12 months. Sorry. That's okay, yeah, no, no. I'm trying to have lunch, I'm a little snoozed. That's quite all right. But they're restricted in time as well. Exactly, exactly. We don't necessarily believe that the employment cases that talk about those types of limitations apply. Certainly not directly, but like I say, I'll get into that a little bit later. But from a factual perspective, before I turn it to the law, Mark Thompson admitted that he performed work for quality transportation services on particular routes for a particular customer, U.S. Silica, you've probably seen their trucks around here, they do quite a bit of hauling, for shipments between Ottawa and Peru, Ottawa and Rochelle, and then Utica and Rochelle. So there's no dispute that while quality transportation was providing the broker customers, part of what Mark Thompson did was these routes for U.S. Silica. The U.S. Silica employee that testified at a deposition in the case, Janice Casey, said that she contacted Mark Thompson after he had done hauling for U.S. Silica, but what she asked him to do was she wanted him to submit proposals to U.S. Silica. She didn't offer to hire him for any particular price. She didn't say we'd like you to haul from this location to that location and we'll pay you $10 a ton. She said, you know, we're looking for truckers, we're looking for haulers. If you're interested, why not submit a proposal? So none of that's in dispute. So it gets us to this concept of solicitation. What is solicitation? And like I said, the parties agree that the Black's Law dictionary definition is appropriate in this case, and Black's defines it as the act or an instance of requesting or seeking to obtain something or an attempt or effort to gain business. And about the only case we've been able to find from Illinois that deals with solicitation and what is solicitation is this Tomey v. Tomey. It's a family squabble, not a divorce case, over insurance business. But the Tomey court, so First District 92 case held, whether a particular client contact constitutes solicitation depends upon two things. First, the method employed. And second, the intent of the solicitor to target a specific client in need of services. It's critical to note what's not a consideration in the solicitation, and that is it does not depend upon the conduct of the party being solicited. In other words, when you're trying to determine if somebody solicited someone, the person who was soliciting and their conduct isn't really relevant to the inquiry. That's critical here because Mark Thompson-Truckin submitted these contract proposals, and these proposals, it's important to point out, were actually contracts. They were called low and rate confirmation agreements. So in other words, when U.S. Silica received these proposals, all they had to do was sign and there's a contract. There's a completed contract form saying here's what we're going to do and here's how much we're going to charge. The first such proposal that was sent from Mark Thompson to U.S. Silica was for the unit to go to Rochelle Route and offer to haul for $8.59 a ton. This is where the conduct of the parties becomes critical. U.S. Silica just flat rejected it. They didn't counter. They didn't say, no, $8.59, that's too much, we'll pay $6.00. They just said no. So Mark Thompson-Truckin- Was Mark Thompson driving that route at that time? I don't know if he was driving that route and trucks on the road at that exact time, but he had clearly driven that route during the term of the agreement. As arranged by- As arranged by quality. So Mark Thompson, $8.59 didn't work, so he submits a second proposal. How about $7.75? Same contract, same form, reduced price. Again, rejected, U.S. Silica. And again, U.S. Silica did not counter. They said, no, that's too much. And I think James Case's assessment was, you're out of the ballpark. You know, you're way out of the ballpark. So third time's a charm. I always tell you kids, be persistent. So Mr. Thompson was persistent. He submitted the third rate proposal, and this time U.S. Silica accepted it. So it goes back to the Tomei versus Tomei, or Tomei, I'm not sure how that's pronounced. One of the critical inquiries is, what was the intent of the solicitor? In this case, we're saying it's Mark Thompson. What was the intent? Well, there's no question here what Mark Thompson's intent was. It was an effort to gain business, which is the definition of solicitation. But he didn't testify what his mental state was. Because he said he looks at U.S. Silica and their huge operations, and his quote from his deposition was, boy, this would be a good outfit to get. So how do they avoid, how does Mark Thompson avoid the inevitable conclusion that what he did on behalf of his company was solicitation? There's a lot of circular argument, but in essence, there's a few different points that they make. One, they characterize the solicitation as something slightly different, negotiation. We weren't soliciting, we were negotiating. I think that's factually disingenuous, and that's why I went through the actual course of events. You don't negotiate with someone by submitting proposal after proposal when the recipient does not respond other than to say no. That's not negotiation. But even if it was, does that change the conclusion that this conduct was engagement for the purpose of gaining the business of U.S. Silica? I would say that it certainly does not. Another argument that Mark Thompson makes is that really all they did was passively accept business for U.S. Silica. I don't know how that can possibly be true under these facts, the undisputed facts. There's no evidence in the record, and they don't even really claim that U.S. Silica ever made any proposal to Mark Thompson. Passive acceptance of business from someone would require, in the contractual arrangements that we're talking about here, would require that U.S. Silica had made a counterproposal. We won't pay you $8.59, but we will pay you $7. And they change the figure and send it back, sign, saying here's our... That, in the absence of any other conduct on Mark Thompson's behalf, might be passive. You know, if you get on the Internet and order something, the party that's selling was passive in that engagement. That's passive acceptance of business. Given all of the efforts undertaken by Mark Thompson before any deal was struck, it's disingenuous to claim that this was passive acceptance of business. The other argument that's made is, well, solicitation requires that you be the party that initiates the contact. And I think this is the biggest focus of their argument, that in order to solicit business from someone, you have to initiate the contact. And Mark Thompson relies on mostly unpublished, out-of-state cases to support this conclusion, that a party, in order to solicit, must initiate the contact. But solicitation, if you understand the definition of it, is not conduct that can only be engaged in by one party through a transaction. In fact, I would posit that any true negotiation in a business arrangement involves solicitation by both parties through the transaction. You know what I mean? You can imagine a scenario where the offer is put out there, you know, I'll offer you for $8.59. No, when I can pay you $8.59, how about I pay you $6.00? No, $6.00 is too low. How about $8.00? Back and forth, both parties are engaged in conduct that's designed to gain the other party's business. There's nothing anywhere, certainly other than these unpublished cases, anything that supports the notion that only one party can be deemed to have engaged in solicitation. So I'm just going to pass real quickly on the cases that were cited. The Mona Electric Group, which is an unpublished Fourth Circuit case, again, just blithely says, well, you can't solicit unless you initiated the conduct. But even the lower courts, the Maryland District Court and the Wachovia case that I cited in my brief, declined to follow that case. Was free to decline to follow because it was an unpublished opinion, which is no small point, as was the Wachovia, admittedly. But I think it's fair to say that was an aberration. And the same analysis applies to the other case where Thompson cites Bahaan Group, Beijing Group versus Consumer Interstate Corp. They're cases that didn't engage in any real significant analysis of this concept of whether both parties to a transaction can solicit each other. In any event, I think it's fair to say Mark Thompson has, at least in their brief and also in the summary judgment motion below, conceded that the best approach to this analysis of solicitation is the one taken in the case that I cited, the Hartnett case, Corporate Technologies versus Hartnett, which is actually a First Circuit federal case from 2013. And that court said that restrictive covenants are meant to afford protection to an employer for a bargain for protection of its accrued goodwill. According declaratory significance to who makes the first contact would undermine this protection because that factor, standing alone, will rarely tell the whole tale. And I think that's a fair way to look at it. And both parties agree that the party with initiated contact standing alone is not enough. So proper interpretation of what's at issue here is that you can't just focus on that single factor, that US Silica invited the proposal. The one issue that I want to pass on briefly is the whole concept of enforceability. Again, it's not an employment context, so I don't think what's now the reliable FHIR analysis really truly applies. But if you were going to apply the question of enforceability, the reliable FHIR case says three factors. A covenant is enforceable if it's no greater than required to protect a legitimate business interest. All the focus in Mark Thompson's brief is on whether there's a legitimate business interest. And so I want to focus on that point because it's such a narrowly drawn covenant that I don't think there really can be any fair argument that it's overly drawn. But a legitimate business interest. If the court was prepared to say that this brokerage arrangement doesn't serve any legitimate function, think about all of the different contexts that brokerage services come up. I mean, the most common one for average people would be hiring a real estate broker to sell your house. And that arrangement I don't think anyone would say is an invalid or against public policy type of arrangement. Yet, how can you be in the brokerage business and not restrict your clients from going direct to the customers that you bring to them? That's what brokerage is all about. You hire the broker to find you customers, to find you business, to find you a buyer for your house. And if that broker can't in turn say, I'll find you a buyer, I'll find you a customer, but you've got to go through me and pay me my commission or my upcharge. You can't go direct to the customer. If that's not legitimate, then effectively brokerage as a business isn't legitimate. So I don't think there's really any argument that this is some void against public policy or unenforceable covenant. Thank you. Thank you, Justices. May it please the Court. My name is Tom Kozio, and I represent Appley Mark Thompson Trucking. Mark Thompson Trucking's motion for summary judgment, and ultimately the Circuit Court's favorable ruling on that motion were the result of a combination of undisputed facts and the application of well-established law to those undisputed facts. The Circuit Court granted the motion because the language of QTS's agreement did not prohibit my client from entering into a business relationship with U.S. Silica, and because the Circuit Court found that my client's conduct and the conduct of its employees did not amount to solicitation within the plain and ordinary meaning of that word. The contract provision at issue here states in part, Carrier will not solicit traffic from shipper, consignor, consignee, or customer or broker. When the language of a contract, such as this one, is clear and unambiguous, construction of that contract is a matter of law. A court must construe the meaning of that contract by examining its language and may not interpret that contract in a way that is contrary to the plain and ordinary meaning of those words. Similarly, and... So the trial court in your opinion is rightfully determined that solicitation can only, is the first instance, is the first contact? Yes, there can only be one solicitor. And that a response can't be a solicitation? That's correct. So the first solicitation that came from U.S. Silica, that contained no terms. So what is the, what would have been the risks relationship? It didn't contain any terms, but it invited my client repeatedly, asking my client whether he had trucks available, whether he could submit rates. So the solicitation isn't necessarily the same as here are the contract terms, accept them, but it's let's work together. Let's enter into a relationship. Let's do what's necessary to enter into that business relationship. Well, when the meeting was first arranged, the first face-to-face meeting, who picked the location? The undisputed facts, and these came from Janice Casey during her deposition, showed that Janice Casey first contacted Mark Thompson's nephew, Dalton. She got the phone number, called Mark, asked Mark, do you have any trucks available? Why don't you submit some rates? There was a second phone call thereafter. She said in that conversation, in that telephone conversation, do you have any trucks available? Why don't you submit some rates? Yes. Okay. Thereafter, there was another phone call. That was the winter of 2015? Yes, pretty much the context of that phone call was the same. Do you have any trucks that we can use in our operation? And that is what then facilitated the meeting at the McDonald's between Mark Thompson, Janice Casey, and Brian Ruff, who was another third-party trucker. Did Casey contact Ruff, the other carrier, to join them at that meeting? Yes. Casey did? It's unclear. Ruff didn't remember whether he was contacted or whether Mark Thompson contacted him, but Casey contacted Mark Thompson and arranged that meeting. Thompson's deposition says that he contacted Ruff. Correct. So whose recollection do you think is probably the best? Janice Casey contacted Mark Thompson and asked him if he could find truckers who would be in the same position as him, and Mark Thompson contacted Ruff. They went to that meeting where they discussed in detail the different routes and possible rates for those trucking services. Was there any exchange of paperwork or figurine at that table at McDonald's? They were asking information about where the loads were going, what they would be, how many there would be a day, but there was no exchange of exact terms. Where did Casey pick up the rate request or the rate proposal? Thereafter, she actually stopped in at Mark Thompson's. She went to Mark Thompson. She stopped in at his place of business. He has a construction trailer, and I believe it was Mark Thompson's wife who provided her with that proposal. Why don't you think that is solicitation? Because, again, this is a response, an invitation to Janice Casey's request. Janice Casey's job as transportation coordinator was to solicit truckers for work, and that's what she did in this case. She was doing her job. The definition of solicitation says the act or an instance of requesting or seeking to obtain something. So isn't it just as reasonable to, you know, when he is seeking to obtain something, that's a solicitation when he submits a bid. And I'm going to hear whether or not there's a question about the reasonable interpretation of that term. I would argue, Your Honor, that the reasonable interpretation of that term really suggests that there can only be one solicitor. Once there is this invitation, any other contact, whether it's negotiation or exchange of terms, isn't deemed to be a solicitation. The other important thing to remember in this context is that it is vital in Illinois to understand that non-compete and non-solicitation agreements and clauses such as this one cover no more than the reasonable import of their language and does not allow for an expansive reading of such restrictive covenants.  In 2009, we argued in our motion that the necessary, the plain, the narrow interpretation of the phrase carrier will not solicit traffic found in QTS's agreement did not prohibit Mark Thompson from accepting work for entering into a contract with U.S. Silica. And we've gone through the undisputed facts. There's no dispute that the actions of Janice Casey facilitated the submission of these rates by my client, but there's also no dispute that Mark Thompson ever submitted any proposals or bids or ever contacted Janice Casey or anyone at U.S. Silica without first being invited, being solicited to do so. Mark Thompson's acceptance of this business or this acceptance of this invitation from U.S. Silica is not prohibited by the non-solicitation clause. The contract was drafted by QTS. It does not prohibit Mark Thompson broadly from entering into such a relationship or from accepting. QTS could have drafted an agreement that prevented all of the things that it now wants to prohibit. It's important to note that it did not. Instead, QTS's agreement, which should be narrowly interpreted and plainly construed, prohibits Mark Thompson from soliciting. It prohibits him from being that person who, without an invitation to do so, submits rates. Without Janice Casey's contact, reaches out to Janice Casey and says, hey, do you need trucks? Again, that's not what he did in this case. While there are no cases that are exactly on point in Illinois, I referenced a number of out-of-state cases that really mirrored the facts of our case. For example, in Akron pest control versus radar extermination, Donald Sellers entered into a stock redemption agreement with his former employer. And as part of the agreement, Sellers agreed not to solicit either directly or indirectly any current or former customers of his employer for a period of two years. Now, Sellers started his own competing business, and his employer's successor, Radar Excavating, brought a lawsuit against him when it found out that the new business was actually doing work with past customers. Seller, just as we did here, moved for a summary judgment, arguing that he did not breach the contract because neither he nor his new business solicited Radar's customers. Instead, as is the case with Mark Thompson Trucking, the undisputed evidence showed that the customers approached Sellers and his new business. Instead, as the case, focusing on the term indirectly, Radar, just like QTS, argued that the contract must be construed broadly to prevent the entering into of any kind of business relationship. The trial court rejected Radar's interpretation and dismissed the claim, noting that the contract did not define the word solicitation. The Georgia Court of Appeals turned to the definition of the word as it is stated in standard dictionaries. In doing so, the court rejected Radar's argument that the term solicit should be interpreted more broadly just because of the inclusion of the term indirectly. And I think our cases, our facts are even better than the Radar case simply because the term indirectly isn't anywhere in QTS' agreement. In Bajon Group versus Consumer Interstate Court, a New York court found that a plain meaning of the term solicit connotes an act of requesting or seeking a particular object or end. And therefore, in order for a non-solicitation clause to be violated, it must be shown that the defendant initiated the contact with the customer. And finally... Where's your support for ways that there can only be one solicitor? Where do you find that? That, Your Honor, is the argument there is that that's the reasonable, narrow, plain inclusion of that term. I was thinking of examples the other day and reminded my wife and I moved into a new house last year and the first thing we did was we wanted to get some blinds. And we found a service on the Internet and the gentleman who would install the blinds came in to give us an estimate and measure the windows. And then I thought, well, what if we had a non... Don't solicit. No solicitors walk on our door. Would he be prevented from entering our house even though we called him and we invited him or would he be free to come in and do his job? And that, I think, goes towards there can only be one solicitor and that's really what happened in this case. Janice Casey was very persistent over a period of many months and wanted Mark Thompson Trucking to submit rates, which was U.S. Silica's customary way of dealing with trucking companies. Do you want us to establish a bright line rule that we look at just who made the initial contact and don't look beyond that? Am I correct? No, Your Honor. While I think it's an important factor, the initial contact, I don't think there can be a bright line rule because those are usually subject to manipulation, especially in cases such as this one. And I think the Hartnett court points to the fact that you usually don't want that to be a bright line test because it doesn't tell the whole story. Now, in Hartnett, in the Hartnett opinion... Your Honor, my brief noted that while there shouldn't be a bright line rule, I'm not advocating for one, but I think it's the main factor in determining... And that's what the trial court found here? Yes. Focused on one factor, and that is who placed the first phone call. All of these cases... Is that correct? That is one of the factors.  Because that's the ruling we have to review. The trial court focused on the absence of any other conduct. So in Hartnett, Mr. Hartnett sent out a blast email to customers, former customers. In most of these other cases, there's usually some kind of solicitation, some kind of a letter, an advertisement, a phone call, whether it's direct or indirect. Tomei was a mass mailing, just like a blast email. Tomei was a mass mailing. And I think, if I remember the holding correctly, that that decision says it's a question of fact. You have to discern the intent of the person sending that mass mail. In this case, Mark Thompson Trucking answered a phone call several times. He did nothing to convince Janice Casey that she should call him. He was very passive in the way he dealt with this, and she was the one who was being persistent in her solicitation. So there's no indirect or direct conduct on Mark Thompson's part. There's nothing in the record that suggests he even had any contact with her whatsoever. And counsel tried to bring that out in depositions. You know, what did you talk about at the Christmas parties? How long have you known each other? And Janice Casey's contact, her contacting Mark Thompson was really out of the blue. He did nothing to cause her to solicit him. I think perhaps the most on-point case is the Mona Electric Group case, where an employee agreed not to solicit the employer's customers. And I will defer to my briefs on that.  But just to finish up, despite the fact that Illinois law requires a plain interpretation, a narrow interpretation in this context, QTS tries to broaden that reach of its non-solicitation clause when it argues that Mark Thompson's submission of rates, negotiation, and offer acceptance, where QTS argues that all of that constitutes solicitation. That kind of a broad interpretation eliminates the need for the word solicit in the agreement. Why not just say you can't enter into an agreement, you can't work for it? Yet they use the word solicit, and now they want to eliminate it, making it superfluous. To say that it only has to be the person who initiated the contact, I think you would probably be 100 percent, I don't think there would be any disagreement, if they sent a contract with Turks. But they didn't. He did. It wasn't in their industry and the way they deal with truckers. It is them inviting bids and then taking those bids and making decisions based on those bids. But those bids submitted by Mark Thompson Trucking were the result of repeated solicitation from Janice Casey, whose job it was to solicit trucking companies for those services. Just to finish up, I think this broad interpretation prohibits anyone from ever negotiating, accepting, offering, without worrying that they will be violating the non-solicitation clause. Unless you have any questions, I'll ask that you affirm the lower court's decision on this case. I don't think so. Thank you very much, Mr. Koza and Mr. Walden. I think the issue with counsel's characterization is that we want some broad construction of the contract. I think the contract should be construed as it's written without adding any unwritten exceptions. And I would note that the contract prohibits solicitation. Period. It doesn't prohibit solicitation unless the solicitation is invited by the customer or any other exception. It just prohibits solicitation. So, as I suggested in my original argument... The limitation of limited routes that he's already driving. Very limited routes. If he had solicited their business for a different route... Absolutely. It would have been fine. You know, he could have called them up and said, look, you know, I've been working the Utica to Ottawa and that's, you know, how about Galesburg? I don't know if they have facilities in Galesburg, I'm just making that up, but, you know, Peoria to Canton. There's all kinds of different routes conceivably that these customers could freely have hired and Mark Thompson could freely have solicited them for. He chose to offer to do it on the exact same route that he was working for Quality. Let me understand what remedy you're asking for. If I'm correct, you're just saying this is a question of fact. Well, it is. I think that it is a question of fact. However, we did not ask for summary judgment. So I want that to be clear. What do you want us to do if we rule in your favor? I want you to reverse the entry summary judgment and remand back to the trial court for further proceedings. But I will point out that when you look at the admitted conduct, I don't think it permits of any other conclusion than what Mark Thompson did was solicitation. But that's a question of fact. That is a question of fact. I agree. And I'm not asking this court to enter summary judgment in favor of the plaintiff, but I think it bears stressing that it's really difficult for this party to come in here and say, I didn't solicit. Because when push comes to shove, the only excuse that can be offered is they didn't solicit because it was invited, because of conduct that the other party engaged in, in this case U.S. Silica, and that runs counter to the timing decision. The focus has to be on Mark Thompson. Did they engage in efforts to acquire business from U.S. Silica? Sending repeated contracts, proposals to U.S. Silica, cannot be characterized as anything other than an attempt to gain their business. So I think it's solicitation. Can you address Justice O'Brien's question about whether there can be more than one solicitor? I think that under the definition of solicitation, not only can there be, but in any negotiation between two parties, there would necessarily be both parties soliciting. A buyer and a seller, or in this case brokers, both parties want the other party's business if they're engaged in negotiations. So when you say to an offer, take a seller in your house, you've got it listed for $300,000, somebody offers $275,000, that's a solicitation. I want to buy your house, I'm willing to pay $275,000. When you counter and say that's not an offer, but I'll pay $295,000, you've solicited them. Is that not conduct engaged in for the purpose of getting that buyer's business? It's easy to think of things in the buyer-seller context, but much of what goes on in business, it's hard to label people a buyer or a seller. Businesses engage in various services with each other, but it really doesn't matter. Once you've set out on a course of conduct designed to secure the business of another party, that is solicitation. And what's important here is that there's no exception in the contract for what Mark Thompson's trucking is asking the court to find, which is it might be solicitation, except that it was invited. The passive argument, I think it's pretty transparent. Mark Thompson was passive until he engaged in solicitation by submitting proposals. So I don't think that passive argument holds any weight. What he's really looking for is an exception to he engaged in solicitation, but it was okay because the other side invited it. And that is a bright-line rule. You can't have it both ways. You can't say solicitation is the first party to engage and open the door to discussions only without having a bright-line rule. I don't think that either it's one factor among many, which we both agree on, or there's a bright-line rule. And once you open the door to considering the entirety, the entire context, U.S. Silicon never made a proposal. They only fielded proposals that they rejected until the third and final one when they accepted it. Thank you. Okay. Thank you, Mr. Baldwin. Thank you both for your arguments today. We'll take this matter under advisory. We'll get back to the written disposition within a short while. And now I'll take a short recess. Thank you.